Good morning, everyone. I will commence this morning with three admissions. As I read the names of the candidates, would you please stand? I will move the admissions first of Leilan Ren, who is a member of the Bar and Good Standing of the Highest Court of Texas, Ma Trang Dang, who is a member of the Bar and Good Standing of the Highest Courts of California and the District of Columbia, and Gregory Doden, who is a member of the Bar and Good Standing of the Highest Courts of New York and the District of Columbia. I have knowledge of their credentials and I am satisfied that they possess the necessary qualifications. In fact, these three young lawyers have brought their considerable talents to my chambers, where they have shown the scholarship, diligence, and extraordinary good cheer, sometimes when the good cheer was a bit strange. And so it is a great pleasure for me to move their admission to the Bar of this court. And I invite Judge Mayer, if he is willing, to respond to the motion. I am happy to correct the motion, Judge Wilkinson. Would you please face the clerk and raise your right hand, please? You swear or affirm that you will purport yourselves as attorneys and counselors of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do. Congratulations and welcome to the Bar of the United States Court of Appeals for the Federal Circuit. Thank you. And on behalf of all of our other colleagues, I would also like to welcome you to the Bar of the Court. And as I like to say, we like to see you back here all the time for social events. Well, it's not bad at the podium as well, just depending on which side you are on. Thank you. The first argued case this morning is number 09712, Risingstone, against the Department of Veterans Affairs. Mr. Carpenter. Thank you, Mr. Court. I'm Carpenter, appearing on behalf of Mr. Randall Risingstone. Mr. Risingstone presents an issue that involves the tension between a judicially created rule of law, in this case the rule involving state rating, and an existing VA regulation, 38 CFR 3.343A. The issue in this appeal is whether or not that regulation can be declared, as it was below, inapplicable in the context of a state rating. Mr. Risingstone believes that he was entitled to the benefit of special protections for individuals who receive a total rating. He did not receive those benefits from the board. The court below decided that their judicially created rule of law trumped. You're saying that we need to read the statute and the regulation in a manner most favorable to the veteran, even though there is, as you know, a very heavy history suggesting how these documents should be read. Well, I'm not sure what history you're referring to, Your Honor. There's a judicially created rule of law that requires the VA, when they're considering a rating over an extended period of time, to consider whether there should be a variation of that rating between, in this case, a 0% rating and a 100% rating, which would be a total rating. There's a specific VA regulation that says when the VA assigns, based upon the severity of the condition, a total rating, that veteran will receive special protections, specifically that there will need to be an examination that demonstrates that there was material improvement before that 100% rating would be reduced. But I'm thinking of the history going back to the 30s, that the rating would not be reduced as apparently was the tendency at the time, but not for reasons that match those here. That's correct, Your Honor. But that rule has been, as it were, superseded by the existing regulation, and the existing regulation calls for specific procedures to be performed by the Secretary, specifically an examination to determine whether or not there was or was not material improvement. The protection that existed originally and that brought about this regulation was the perception that there was an arbitrariness in the reduction of those total ratings. This case involves a determination by the Board of Veterans' Appeals over an extended period of time, approximately ten years, for the rating of this individual's service-connected disability. Is it your view that the government is entitled to absolutely no deference in this contract? Well, to the contrary, Your Honor. I believe they're entitled to deference to their own regulation, and this is what their regulation requires. But what about, okay, let's go past that question and the question I was giving was specific deference to their interpretation of their own regulation. Is their view entitled to no deference in that regard? You're interpreting the regulation here to say it does not apply to state ratings, correct? That's correct. And are they entitled to any deference with respect to that interpretation? Not in terms of simply, as they are in this case and as they did below in this case, taking a litigation position. I do not believe their litigation position is entitled to any deference. If there had been a general counsel's opinion that said that in the context of state ratings, we will not apply the provisions of 3.343A, then yes, I believe that could be- Aren't there cases that allow for taking a position in litigation in the absence- I mean, your contention is not that they've changed their position, but simply that it's a first definitive position that's been taken in terms of a litigation position. Well, I actually- Is that not entitled to any deference? Well, in fact, the case that preceded this below, the O'Connell case, the government took precisely the opposite position and said that this regulation, 3.343, it's okay- Part of my problem with that analysis is you're saying to me here, we shouldn't give any deference to a litigation position. But if you want to, say, look at litigation positions, the position taken by the government, the federal administration in this case, is clearly a position taken by them as opposed to the comment made in the other case by an attorney or argument on an issue that wasn't even before the tribunal. So if you want to concede that there's a litigation position, I think the current litigation position certainly trumps the prior. No question, Your Honor. And I'm simply saying that in terms of the scale of the amount of deference that should be afforded, if there is any deference to be afforded to that litigation position of their own interpretation, of their regulation, it should be de minimis in this case. It should be at the lowest possible level. But the fact is, is that that is simply contrary to the way in which this regulation has always operated and the way in which this regulation has been interpreted by the court below. Well, what do you mean how it's always operated? Do you mean as a practical matter every time? Is there anything in the record to show us what's been happening over the past 50 years in terms of these staged ratings? I mean, I don't know. There could have been 100,000 cases where ratings were lowered, or the staged ratings were lowered from 100 to something less than that, and medical examinations were not given. Is there anything in the record to indicate what, in fact, the operation has been? There is some reference in the record vis-a-vis the decision in the court below in Fenderson, which talks about the fact that there was some policy of dealing with staged ratings. What's absent in the record is any indication of how the VA has ever treated the relationship between staged ratings and treatment of people. So there is no history of that being treated in a certain way? No. That's correct. So they're dealing with a blank slate, and it's a position that they took in litigation here. That's correct. That came up in this case for the first time, and when they were confronted with that position Yeah, but you say for the first time. Which way is that? We don't know whether it's the first time because it's the first time that anybody's challenged it. We don't know if because it's the first time that indicates that their practice has changed at all. We don't know whether or not they've been consistently, historically, giving a medical exam when they decrease the staged rating or not. That's correct, Your Honor. But they have not been doing staged rating until Fenderson. And I believe Fenderson was 1999, maybe? Yes, 1999. Until 1999, the VA wasn't traditionally applying, except in the parenthetical references in that case, that they somehow occasionally did this practice of staged ratings. There's simply nothing in the record to indicate that 3.343 was ever not used as it has been required to be used by the plain language of their own regulation. And nothing in the record that it has been used in the way you would have it construed. Well, I think the question is not in the way that I would have it construed. That's the way in which the Veterans Court has interpreted this regulation and has consistently, in its case law, says that's what this VA regulation means. That you cannot reduce before you comply with the requirements of this regulation. And that is what... Well, the Veterans Court has never held that that regulation applies to staged ratings. To staged rating, that's correct. Well, that's the issue. Let me ask you, just before we run out of time, the government puts forward, as I understand it, a kind of policy rationale for why this medical exam would be required prospectively, but not retroactively for staged ratings. Is there something deficient about that? I mean, it seems to make sort of reasonable sense to me that there would be a rationale that would be applicable to prospective and not to retroactive ratings. Well, to be perfectly candid, Your Honor, I believe that this whole notion of prospective and retrospective is ethereal and not substantive. And by that I mean that if you look at the facts of this particular case, it wasn't until 2006 when the Board of Veterans' Appeals addressed this issue that the entirety of the 10-year time period was looked at. But it was supposed to have been looked at in 1999 when they made the initial rating. And then he appealed the initial rating of 30%, got a reversal, a remand from the Board to send it back for the Fenderson analysis. So they simply didn't do it to begin with. The point is, is if you do it in the beginning, and this doesn't come up, at least in terms of the Board's decision, until 1998, in fact, had they looked at it the first time, it wouldn't have been retrospective. It would have been precisely at the time in which they made the initial decision. Of course, that's... It was retrospective. And what is troubling about this, when they say, be careful what you ask for because you may get it here retrospectively, for the period of about a year, they awarded 100% disability. But significantly retrospectively because the record apparently showed to those who were making this decision that the veteran had improved significantly. If, in fact, it were known that once that 100% were awarded because of the period of hospitalization, you couldn't take another look at it without going through some significant procedures not yet established. Maybe you find controls imposed at that stage, which weren't imposed here. In fact, the Board was trying to do the right thing by observing the degree of disability over particular periods and awarding compensation for those periods. This would be a new standard that might very well diminish the awards rather than enhance them. Well, that certainly has always been the potential route for state's ratings anyway to determine whether or not they should be looking at these and then deciding to reduce them after they increase them. That's the flip side or the negative side, as you suggest, of state's ratings inherently. The veteran is already at risk, if you will, for that circumstance. Yeah, but there's an appeal procedure. I mean, you file a notice of disagreement. It's not like the government is free to decrease the rating from 100% without bearing any burden. The only question here is whether or not, when we look retrospectively, and we know there's not been a medical exam, whether this particular class of people, retroactively, should be getting this award back pay. But as Judge Newman suggests, prospectively, it might change the way people behave in ways that acts to the detriment of veterans. Except that, Your Honor, that didn't happen in this case until the Board of Veterans' Appeals decision in 2000. It wasn't until the Board of Veterans' Appeals in 2000, and then his only appeal was to court. And the only thing that he could complain about at court was, is yes, they advanced my rating, but they didn't give me the benefit of the protections that were required to be afforded to me once they gave me that rating. And if I could clarify just one point, Your Honor, because I think it's important. You said a temporary rating based on a period of hospitalization. That's not the case in this case. In this case, the Board made a specific finding that for a period of a little more than a year, that he was entitled to a 100% scheduler rating based on the severity of the condition. There's a separate VA... The record on both sides mentions the four days in a hospital, so somebody thought that it was worth mentioning. Yes, except that there's a specific VA regulation, and when Judge Hagel wrote this opinion, he talked in terms of a temporary assignment of a total rating. There's a specific VA regulation for the temporary assignment of a total rating when a veteran is hospitalized for a service-connected disability for a period of more than 21 days. That's called a temporary total rating. That's not the case here. This is an actually assigned rating of 100% based on the severity of the condition under the predicates set out by 3.343. I see that I'm substantially in line. We will save you a lot of time, Mr. Koeppen. Mr. Hoffman? May I please declare? I'd like to just address a couple of the points raised by counsel. Initially, this idea of retrospective-prospective, the response was something about the Board should have done something when it made the original decision to grant 100%. I think the record clearly reflects that this is the kind of case that you cannot correct these kinds of things. It wasn't until 2006, not 2000 or 2001, that the Board determined that 100% rating for the one-year period that the Court was talking about earlier was appropriate. The record clearly shows that when the claim was submitted in 97, or 96, it was originally denied, and it was in 1999 that the Regional Office granted only a 30% rating. It was after that period that, finally, in 2006, the Board adjusted all the ratings and introduced the stage rating, 30 to 50 to 100, and then back down to 30. At the time that happened, clearly, there was no way to go back in and try to comply with any procedural requirements that might be required by 3.343. That's the gist of why the Secretary doesn't believe that you can actually try to meet retrospectively timelines that are really geared to address prospective action. But isn't one of Mr. Cartman's strongest arguments that at the date on which the rating was set back at 30%, there was not some sort of major... There was a review at a VA facility, but that there was not a significant examination to show regulation or reduction of the disability? In a way, the strength of Mr. Eisenstein and Mr. Cartman's argument is the fact that, from a practical perspective, when a claims adjuster is going to do a staged rating, he's going to take into account many of the very same criteria that one takes into account when applying 3.343, and that is because all of the regulations in Part 3 and the early part of Part 4 of 38C are designed to affect one thing, and that is to get the best possible rating for the time period in question for the individual claimant. So, yes, in this case, in fact, we would submit, if you were to apply 3.343 to this case, you would find that the determination that the rating was reduced to 30% is well supported by medical evidence, and frankly, it would be sufficient to satisfy 3.343, as the record provides, primarily at Joint Appendix 86, where the board is going through all the pieces of medical evidence. What are you saying? This issue, the decision on this point is not necessary here? No. It's harmless error in any event? That's not what we're saying, because there is a reason not to require a claims analyst to abide by prospective procedural rules when trying to construct a historical staged rating. But in this case, I thought you just said it didn't matter because whatever requirement we might impose, if we agree with Mr. Carpenter, does not change the result in this case. No, it does, because what Mr. Eisenstein is really trying to do here is to use 3.343 sort of as a sword to undo staged ratings in a way that's different from what normally he did in this case and what normally anyone would do, which is simply to appeal the staged rating and argue that the staged rating wasn't supported by the evidence. And that's available to the claimant in the live appeal process. Appeal your own decision staged rating to the board and say that change that you made from 100 to 30 is not supported by the evidence. That's available, and that occurred, and it can occur in all these cases. All we're suggesting is that... What we're suggesting is why the court can't require this more prospective regulation to be applied to a historical or retrospective analysis is that you're trying to introduce perceived... sort of like stop-start claims. What we heard this morning in the argument was that the way to properly apply 3.343 is when you reach the point, and it's also in the blue briefs, when you reach the point where the evidence indicates that there's 100%, then you must stop, and you must then sort of change gears, and you've got to then go out and do the special 3.343 analysis. You can't do that. You can't do it retroactively. It's a practical matter, though. What it means, I think, is that when you're looking back at this record and you come to the point in time where somebody, you think, warranted a 100% rating, then unless there's something in the file, in the old file, that shows that there was a medical exam to justify changing that, you've got to keep that 100% rating for the duration. It's a practical matter, isn't it? As a practical matter, but that would also be the argument that anyone would raise challenging the staged rating. There's no reason to point to 3.343. You would simply say... Well, the difference is, in my hypothetical, he wins automatically if there's no medical exam or nobody's going to change the ratings from 100%, whereas under your scenario, they might change it and then they'll fight on the fight on reasonableness of doing so, right? I suppose that would be... Let me ask you about deference. The government's deference about their entitlement. Let's assume that we construe the regulation as being kind of facially unambiguous. I mean, it says it applies to ratings, it applies to ratings. Isn't your deference point here really on the prong of Chevron that says, does it speak to this issue? Right. I mean, deference pops up when there's some ambiguity. So if the court were to determine... Yes, if the court were to determine that the plain language of this regulation applies to retrospective staged ratings, then there really isn't room for deference in that situation, whether it be Chevron or Cathedral or the various names that people apply to deference or to agencies interpreting their own regulation. What we maintain is that, initially, we think that actually the plain language here applies to that prospective act. And that's because the word reduced is used? Yes, and continuance of... And that's sort of the plain language approach. Then the next step would be, to the extent of some ambiguity, we could look at the history behind it. And that history includes the 1934-35 congressional actions relating to the World War I award... ...and VA's reaction that, when you look at 3.343, the purpose of it, basically, is that when someone is in the seat of the 100% total disability rating, VA can't simply go in, like what happened prior to the 1935... But that is a sort of ancient history. Is the government saying that that applies, that nothing has changed? That informs... We think that that informs how 3.343 should be interpreted. Well, it shouldn't inform it very much, because there was no conditional review until 1988. And as the report has said, we're not going to give a whole lot of credence to the regulations and practices that were never subject to review. Well... And so I don't know how... Yes, but... ...that's something. Well, but once we get past the question of whether the plain language does or does not, you know, rue the day... And then you can look toward the history, as you would any history, to try to... This court would be actually making an interpretation and concluding that, yes, this regulation was designed to prevent the VA from taking away what it had already given without obtaining medical support for that taking away. And, see, that's different than any kind of staged rating approach, which is happening... But the VA is giving at that time. It is giving you certain things. Essentially, if you look at it this way, it's giving you certain ratings with various effective dates, depending upon what the evidence holds. And that's what happened in this case. When they looked... When the board looked at the evidence, they found that, yes, there was... Well, they actually found that there was a period where there was some question whether he might have been entitled to 100% disability, and it gave him the benefit of the doubt and gave him that 100% disability. But there was no question after May of 1999 that he was no longer entitled to that based upon the medical evidence. And so, in a way, in the same award, they just provided different effective dates for the different ratings they provided. And so, for the same reason, that's the only way you can do that. And that supports with the overall theme of 38 CFR Parts 3 and 4, which is to try to find that best rating which compensates, to the best possible manner, the disability at issue. And that's what happened here. You said there was no question that after May 1999 that he wasn't entitled to the higher rating, but that really hasn't been explored. Well, it has been explored to a level. It's not part of what's been presented to this court because... What's been said is that the 100% should stay, so we don't have to explore it. Right. In other words... But is it nonetheless if we should agree somewhere along the way that it isn't clear-cut one way or the other? Is that still open for exploration? I think that what would happen would be you would remand it to say 3.343 does apply, assuming that that's what the court would do. Then the Veterans Court would then remand it to the board, saying, well, 3.343 does apply. Does it change anything? And the board's made factual findings in support of its own assessment of the stage rating, which suggests that after 1999, Mr. Eisenstein wasn't entitled to 100% disability. And so the question then would be if the board would simply continue to abide by the factual findings it's already made and said, OK, even if 3.343 applies in this case, no matter, because the medical evidence of record demonstrates that even if you had applied it at the time, which would have been impossible, but even if you had, there was medical evidence dealing with the psychological state of Mr. Eisenstein in 1999, and that indicated that he only was stable to the 30% level of the appropriate rating. But they didn't have the examinations? No, they had examinations in this record. Again, I would direct the court's attention to Joint Penalty 86, which is the board's recitation of why the evidence that informed its decision to lower the rating. And you go through, and you'll see there's a May 6, 1999 mental health examination report, one from April 2000, another from October 2000, one from June 2003, one from January 2004, and another from May of 2005, and finally a VA psychiatry clinic note from September 2004. And all of this was relied upon by the board below in support of its decision that after May 1999, Mr. Eisenstein was not entitled to a rating in excess of 30%. But am I correct that if Mr. Carpenter were to prevail on his argument, unless until cases that have already happened, automatically we would, and the attorney, including Mr. Carpenter, could go back and open up any case in which there's been a staged rating where there's been a decrease from 100%. And irrespective of how strong the evidence might be that the decrease was necessary or reasonable, if there's no medical exam on the record, that person would automatically be referred to 100% retroactively for that whole staged rating period. That could be. That could be. Obviously, there are some medical... I mean, the question would be, what is the nature of the medical evidence? Because one would presume that in every staged rating, the determinations are supported by medical evidence. And so, yes, Your Honor, you may be correcting to the extent that... What type of evidence is available? Is it the type of exam that might be required by 3.343? Or might there be some interpretation that says, well, it's harmless in this case because although it wasn't on 3.343. But you're right. The gist of the question is, yes, you have that, and we would expect anybody who's received a staged rating... I might add a comment that although 1999 was the date of the Feddersen decision, which was the first time that the Veterans Court sort of addressed staged ratings, the VA had been doing that before that. And that gets to the other question about deference that was raised with counsel about the concept of litigation positions, and that in this situation, we understand that the VA has done staged ratings for over 20 years, or about 20 years at least, and they don't sit there and tick off a sheet that says 3.343, even though they may consider similar types of evidence in informing their decisions. But that is the kind of behavior that courts will look to to inform their determination about whether the agency is entitled to deference. I think what counsel... Yeah, well, my problem is we don't have that on the record. I mean, that's what I try to ask Mr. Carpenter. Right. That we don't have record evidence. Do we that the VA has consistently for the past 20 years decreased 100% to less than that and never looked at and never necessarily required a medical exam? There was no list of cases in which that occurred provided below. So how can we use the notion of what the practice has been over a certain period of time? Well, the veterans court relied upon the statement of the director of the Compensation Pensions Program, who's in charge of all the regional offices, who indicated that it was the practice of the regional offices not to have to follow a 3.343 sort of checklist when trying to perform a historical state treatment. Why did the government ask for a remand when it was asked what the government's position is? Didn't they below initially ask for a remand so they could go back and figure out what their position on 3.43 was? Yes, I believe that that did occur. That sort of undermines your notion that there was a consistent position for the past over 90 decades. Not necessarily. You know, as the court alluded to earlier, the individual... We don't see much distinction between that and standing up in court and trying to answer a question from the bench about something. In this case, when the VA actually sat down and came up with a position, they realized that this is our position and that's what we put forward to this court. Okay, any questions? Any questions? Thank you, Mr. Harkin. Mr. Kagan. What are the deficiencies of the evaluations that were performed as opposed to the one you would like a medical exam and you say was not? Well, what is required to be performed by 3.343 is an explanation that addresses the specific issue as to whether or not the condition has materially improved. That's the standard under the regulation. There is no evidence, notwithstanding anything Mr. Harkin said or anything that the board referred to in its decision, there is no evidence that observed that there was material improvement after May of 1999. Wait, the record says it said, well, at least in the CAVC position, it says VA treatment note you find that as of that day, which is May 6, 1999, quote, the severity of symptomology had abated. Isn't that from the record of some sort of medical note? That's correct. That's an outpatient treatment note that was made not as part of an examination of Mr. Reisenstein for the express purpose of determining whether there was material improvement. On that particular day, on May 6, that was the observation made by that treatment note. An examination is different than a regular treatment note in that the idea is to look at the totality of his circumstances, not what his circumstances happened to be at that particular time. And there may have been an abatement on that day. One of the things that VA regulations caution is is that particularly with mental illness, there is a great deal of variance from day to day in the way in which a condition may present itself on any individual day. But the question that is to be addressed under 3.343 is has there been material improvement under the ordinary conditions of life to be able to assume. It says 3.43 says material improvement. Is there a difference between material abatement of symptomology and material improvement? I would suggest that there is, Your Honor. I do not believe that an observation in a treatment note is the same as a medical examination that determines there was material improvement in the condition as contemplated by 3.343. And that would be your response to all of the other advertisements, Your Honor? Oh, absolutely, Your Honor. And the point here is, and what Mr. Hockey seems to be overlooking is, and the government has overlooked, is this regulation that creates the opportunity to create the precise type of evidence to make this judgment, to address a specific question. That produces the evidence. What they're attempting to do is retrospectively say, well, we can create that by the evidence of record. The regulation says, no, you will create it contemporaneous to any action in contemplation of a reduction. But that's the whole notion. That's the universe we're operating under if we're dealing with stage rate. By definition, we're always going back to a point in time retroactively making determinations, right? Isn't that by definition what we're dealing with in the stage rating process? Well, not necessarily, Your Honor. And that's why I refer to it as being somewhat illusory, the notion that it's retrospective. Every time the VA is called upon to make a determination, they are making a determination about what the condition has been retrospectively, but also is likely to be prospectively. When the VA made its decision in April of 1999, it determined in April of 1999 that the evidence that eventually the board found entitled to 100% only entitled him to a 30% rating. So they were looking at exactly the same evidence. That evidence in that window from March 1998 to May 1999 didn't change. All that changed was the set of eyes that looked at that evidence. And what I'm suggesting to you is that in April of 1999, had they felt like the evidence indicated material improvement, then they should have said, but we want an examination right now, and we will continue the 100% pending that examination. If that examination says material improvement, then there should be a reduction because there is evidence of material improvement as required by the VA's plain language of its own regulation. I think I've said everything that I need to say. Thank you all very much. Thank you, Mr. Carpenter, Mr. Elkins. Please, let's take another submission.